IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA          )
                                  )
            v.                    )          Criminal Case No. 3:25CR135 (RCY)
                                  )
BRIAN LAMONT JONES,               )
                                  )
            Defendant.            )
                                  )

## MEMORANDUM OPINION

This matter is before the Court on Defendant Brian Lamont Jones's ("Defendant") Motion to Suppress Evidence Due to Invalid Warrants ("Motion to Suppress").  Mot. Supp., ECF No. 19. Defendant challenges two warrants: (1) a 24/7 real-time location monitoring warrant ("Monitoring Warrant"), *see* Mot. Supp. Ex. 1, and (2) a warrant authorizing the search of a residence located at 2400 Terminal Avenue, Richmond, Virginia ("Residence Warrant"), *see* Mot. Supp. Ex. 2.  After considering the parties' briefs and hearing oral argument, the Court denied Defendant's Motion to Suppress for the reasons articulated herein and on the record at the suppression hearing.

### I.  RELEVANT PROCEDURAL HISTORY

Defendant was indicted on August 19, 2025, in a four-count indictment charging the following:  (1) Possession of Firearm by Convicted Felon, in violation of 18 U.S.C. § 922(g)(1); (2) Possession with Intent to Distribute 40 grams or more of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(B); (3) Possession with Intent to Distribute 28 grams or more of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(B); and (4) Possession with Intent to Distribute Cocaine Hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Indict., ECF No. 1.  On January 7, 2026, Defendant filed the instant Motion to Suppress.  Mot. Supp.  The Government filed its Response on January 22, 2026.  Mot. Supp. Resp. ("Resp."), ECF

1

No. 23.  Defendant filed his Reply on January 29, 2026.  Mot. Supp. Reply ("Reply"), ECF No. 25.

Finally, on March 26, 2026, the parties appeared before the undersigned for a Suppression Hearing, during which the Court denied Defendant's Motion to Suppress on the record,  ECF No. 28, and by written order indicating that a memorandum opinion would follow, ECF No. 29.  This memorandum opinion fulfills that directive and further explains the Court's reasoning.

## II.  STANDARD OF REVIEW

The Fourth Amendment requires each search warrant to be supported by probable cause, which is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 US 213, 238 (1983).  "Officers must be given leeway to draw reasonable conclusions from confusing and contradictory information, free of the apprehension that every mistaken search or seizure will present a triable issue of probable cause." *Id.*  Probable cause is often based on "common-sense conclusions about human behavior." *Gates*, 462 U.S. at 231–32.

A reviewing court must afford great deference to the probable cause determination made by the judicial officer issuing the warrant. *United States v. Williams*, 974 F.2d 480, 481 (4th Cir. 1992).  Thus, "the task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).  In conducting that analysis, the reviewing court considers only the information presented to the magistrate who issued the search warrant. *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

### III.  RELEVANT FACTS

As noted at the outset, Defendant challenges two warrants: the Monitoring Warrant and the Residence Warrant.  The Court addresses each warrant in turn.

### A.  The Monitoring Warrant[1]

On or about March 12, 2025, Detective Alston of the Richmond Police Department obtained a warrant authorizing the collection of prospective real-time location data for the Subject Telephone Number (ending in 8540) for thirty days.  Mot. Supp. Ex. 1 at 1.  The supporting affidavit stated that, in early March 2025, a confidential source ("CS") purchased crack cocaine and fentanyl from Defendant after arranging the transaction using the Subject Telephone Number, which Detective Alston understood to be used to accept requests for narcotics.  *Id* at 2.

Detective Alston explained that the warrant was sought to further an investigation into Defendant's suspected narcotics distribution by tracking his daily movements.  *Id* at 3.  The affidavit also summarized Detective Alston's ten years of experience with RPD, his assignment to the Special Investigations Narcotics Division, and his training and teaching experience in narcotics investigations.  *Id* at 4.

Based on his training and experience, Detective Alston averred that individuals involved in narcotics distribution commonly use cellular phones to facilitate drug transactions and communicate with buyers and sellers.  *Id.*  Thus, based on the controlled purchase and the Subject Telephone Number's involvement in arranging that transaction, Detective Alston averred that

---

[1] Such warrants are commonly referred to as "ping warrants."  *In re Search Warrant Application for Location Info.*, 757 F. Supp. 3d 1099, 1102 (N.M.D. Oct. 18, 2024) ("In what are commonly referred to as '**ping warrants**,' law enforcement obtains an order from a court that requires cell phone companies to disclose, at all times day or night and typically for a period of thirty days, all location information emitted from a suspect's cell phone.") (emphasis added)).

3

there was reason to believe that the user of the number was involved in a larger drug-distribution organization. *Id*.

**B. The Residence Warrant**

On or about April 5, 2025, Detective Alston obtained a search warrant for Defendant's residence at 2400 Terminal Avenue, authorizing a search for the following:

> All compartments, containers and safes that can be utilized to concealer hold narcotics or other illegal items. Any packaging material consistent with the distribution of illegal narcotics and items utilized to mix or make illegal narcotics. Any electronic scales consistent with the weighing of illegal narcotics. U.S. currency, firearms, ammo and electronic devices. Cellular devices that are associated with the fruits of the crime. Any and all documents on the premises associated with the target address. Curtilage of the residence and all persons whom occupy the 2400 Terminal Ave residence.

Mot. Supp. Ex. 2 at 1–2.

In the supporting affidavit, Detective Alston stated that, beginning in late February 2025, a CS reported knowing an individual nicknamed "Byrd" who sold cocaine and fentanyl in Richmond's Southside and lived "off Terminal Ave." *Id* at 5. The source identified Defendant from a photograph as "Byrd." *Id*. The affidavit described a controlled purchase of narcotics from Defendant and explained that, before the controlled buy, Detective Alston observed what he believed to be a drug transaction involving the same vehicle later used in the controlled purchase. *Id*. The source reported that Defendant possessed a "rifle-style weapon" inside the vehicle and that he "usually sits in that general area and deals drugs all day." *Id*. A DMV inquiry revealed that the vehicle—a Ford Taurus bearing Virginia license plate TVS-3346 ("Subject Vehicle")— was registered to a woman residing at 2400 Terminal Avenue. *Id.*

After obtaining the Monitoring Warrant for the Subject Telephone Number, Detective Alston began surveilling 2400 Terminal Avenue in March 2025. *Id*. During that surveillance, he observed the Subject Vehicle parked in the driveway and confirmed through location data that

4

Defendant was "around the residence." *Id.* On one occasion, Detective Alston observed the Subject Vehicle departing the residence with Defendant in the passenger seat. *Id.* The Subject Vehicle traveled through "the Westend part of the city, the museum district and then back in southside all within 45 minutes." *Id.* at 6. During that period, Detective Alston arranged a controlled-buy operation, during which he observed Defendant execute a drug transaction via camera. *Id.* Specifically, video footage captured Defendant retrieving narcotics from a baggie beside him, with an additional baggie visible in the glove compartment, and location data placed the Subject Telephone Number in the same area during the transaction. *Id.*

The affidavit further stated that, in late March 2025, surveillance observed Defendant arrive at and depart from the Terminal Avenue residence in the Subject Vehicle. *Id.* Location data subsequently placed the vehicle in the 1200 block of Richmond Highway, where the Detective Alston observed what appeared to be three drug transactions occurring at the side of the vehicle where Defendant was seated. *Id.* at 6–7.

Finally, in early April 2025, surveillance showed Defendant and a woman briefly enter the Terminal Avenue residence for 17 minutes and later leave together in a rental vehicle. Officers followed the rental vehicle to another location, where they observed what appeared to be four additional drug transactions while Defendant remained seated inside the vehicle. *Id.* at 7. Records further indicated that the rental vehicle was associated with the 2400 Terminal Avenue address. *Id.*

Based on database searches, review of the location-monitoring data, his surveillance of Defendant, and his training and experience, Detective Alston asserted that Defendant was a source of narcotics supply and stored narcotics at the 2400 Terminal Avenue residence. *Id* at 7–8.

5

## IV. ANALYSIS

Based on the aforementioned affidavits underlying the Monitoring and Residence Warrants, the Court concludes that substantial evidence in the record supports the Virginia magistrate's decision to issue the warrants. The Court addresses each warrant in turn.

### A. The Monitoring Warrant

The Court finds that substantial evidence in the record supports the issuance of the Monitoring Warrant. The Fourth Amendment unquestionably extends to historical cell site location information held by wireless carriers. *See United States v. Carpenter*, 585 U.S. 296, 309–10 (2018). Accordingly, the Government must establish probable cause prior to obtaining a warrant for such data.

Defendant contends that the requisite probable cause is lacking to justify the breadth of the Monitoring Warrant. Mot. Supp. 4–7. Specifically, Defendant contends that the Monitoring Warrant is facially invalid because it lacks a "triggering event"—invoking the anticipatory-warrant doctrine under *United States v. Grubbs*, 547 U.S. 90 (2006).[2] But *Grubbs* is inapplicable here: real-time location warrants are not anticipatory warrants, meaning they do not require a triggering event. *See In re Search Warrant Application for Location Info.*, 754 F. Supp. 3d 1099, 1112 (D.N.M. 2024) (rejecting application of *Grubbs* to real-time location tracking because "anticipatory search warrants do not involve real-time delivery of information on a rolling basis

---

[2] Anticipatory search warrants authorize a warrant to be issued if and when a triggering event occurs. *Grubbs*, 547 U.S. at 96–97. In *Grubbs*, the Supreme Court approved of a warrant to search a suspect's home, even when the search could only take place after the suspect accepted a parcel containing child pornography that he had ordered from an undercover postal officer. *Id.* at 92–93. It endorsed the two-step logic that once the suspect accepted the package (and there was probable cause he would do so), there would be evidence of a crime in his home, providing probable cause for the search. *Id.* at 96–97 ("In other words, for a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that *if* the triggering condition occurs "there is a fair probability that contraband or evidence of a crime will be found in a particular place," but also that there is probable cause to believe the triggering condition *will occur*." (emphasis in original)).

throughout the warrant's timespan."); *see also United States v. Krueger*, 2024 U.S. Dist. LEXIS 180991, at *27 (D. Minn. Sept. 11, 2024).  The Monitoring Warrant therefore must be evaluated under traditional probable-cause principles rather than the anticipatory-warrant framework.

Here, the Monitoring Warrant was issued pursuant to Virginia Code § 19.2-70.3, which authorizes real-time location monitoring when the issuing authority "is satisfied that probable cause has been established that the real-time location data sought is relevant to a crime that is being committed or has been committed or that an arrest warrant exists for the person whose real-time location data is sought."  Va. Code. § 19.2-70.3(C).  Additionally, such warrants generally should not exceed 30 days.  Va. Code § 19.2-70.3(J).  The record contains substantial evidence supporting the magistrate's probable cause determination.

Specifically, the CS contacted the Subject Telephone Number to arrange and execute a controlled buy with Defendant in early March 2025.  Mot. Supp. Ex. 1 at 3.  From those facts, it was reasonable to infer that the Subject Telephone Number was being used to facilitate narcotics transactions and that Defendant was associated with the number, as he personally supplied narcotics to the CS during the controlled buy.  On that basis, Detective Alston applied for, and obtained, a 30-day Monitoring Warrant in compliance with § 19.2-70.3.

Given these circumstances, there was ample probable cause to conclude that the requested real-time location data sought was relevant to narcotics-distribution offenses that had been committed.  Thus, because the Monitoring Warrant complied with § 19.2-70.3's 30-day limitation and was supported by probable cause, Defendant fails to demonstrate that the Monitoring Warrant is invalid.  Accordingly, Defendant's challenge to the Monitoring Warrant fails, and the Motion to Suppress will be denied as to that warrant.

**B. The Residence Warrant**

The Court finds that substantial evidence in the record supports the issuance of the Residence Warrant. Defendant advances three arguments in support of suppressing the evidence seized pursuant to the Residence Warrant: (1) it was based on the invalid Monitoring Warrant; (2) the residence lacked any nexus to the drug distribution activities; and (3) it was overly broad in that it permitted the seizure of "'any and all documents' in the house regardless of their relationship to the crime for which probable cause was asserted." Mot. Supp. 1, 4. The first argument is unavailing for the reasons already discussed. The Court likewise rejects the remaining two arguments for the reasons that follow.

1. Nexus to the Residence

The Fourth Circuit has "long held that 'the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Moore*, 477 F. App'x 102, 205 (4th Cir. 2012) (quoting *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988)). "Thus, when factually supported, a sufficient nexus between a defendant's residence and criminal activity may be established even when the affidavit in support of the search warrant does not contain factual information directly linking the items sought to that residence." *Id.* As such, the Fourth Circuit has "declined to require direct evidence that drugs are located in a residence when other facts and circumstances sufficiently establish probable cause for the search." *Id.* (citing *United States v. Grossman*, 400 F.3d 212, 218 (4th Cir. 2005)). Indeed, the Fourth Circuit has recognized that "it is reasonable to suspect that a drug dealer stores drugs in a home to which he owns a key." *Grossman*, 400 F.3d at 218.

8

Here, Defendant argues that the requisite nexus is missing with respect to the Government's Residence Warrant. Mot. Supp. 8. Specifically, Defendant contends that the "affidavit did not allege any transactions occurring at the house, and did not allege that Mr. Jones was at the house either before or after any of the controlled buys." *Id.* Thus, in Defendant's view, the Fourth Circuit's decision in *United States v. Lalor*, 996 F.2d 1578 (4th Cir. 1993), is dispositive. In *Lalor*, the Court found the requisite nexus missing because the supporting affidavit was "devoid of any basis from which the magistrate could infer that evidence of drug activity would be found at 1572 Waverly Way." *Id.* at 1583. The affidavit stated only that informants believed the defendant lived at the residence and that his car was observed nearby; it contained no facts connecting drug activity to the residence itself. *Id.* at 1580–81. The instant case does not suffer from those defects; rather, the Fourth Circuit's decision in *Grossman* is instructive.

In *Grossman*, the Fourth Circuit denied a motion to suppress evidence seized pursuant to a residence warrant, finding that the supporting affidavit relied on information from a reliable informant identifying the defendant as a drug dealer and officers' observations of suspicious, evasive conduct near the home. *Id.* at 217. That reasoning is consistent with other Fourth Circuit decisions finding probable cause on similar facts. *See United States v. Hargis*, 37 F. App'x 656, 658 (4th Cir. 2002) (finding "stronger support for probable cause than the affidavit in *Lalor*" where the defendant was observed traveling between his residence and the site of drug dealing and an experienced officer explained that street-level dealers commonly store drugs in their homes).

So too here. On two occasions, Defendant was observed leaving the Subject Residence and traveling to the location where he conducted drug transactions. Mot. Supp. Ex. 2 at 5. Both vehicles used in those transactions were registered to the Subject Residence. *Id.* Coupled with the Detective Alston's professional opinion—endorsed by the Fourth Circuit, *see Grossman, supra*—

9

that street-level dealers frequently store drugs in their homes, these facts established sufficient probable cause to search the residence.

Accordingly, and unlike in *Lalor*, the affidavit provided a substantial factual basis form which the magistrate could infer that evidence of narcotics distribution would be found at the Subject Residence.  Defendant's nexus challenge therefore fails.

2. <u>Overbreadth</u>

Defendant also—in passing through a single sentence—advances a separate, alternative argument to suppress the Residence Warrant, namely, that the Residence Warrant "was also overbroad, allowing seizure of firearms, currency, and '**any and all documents**' in the house regardless of their relationship to the crime for which probable cause was asserted."  Mot. Supp. at 4 (emphasis added).  Defendant supplies no case law or otherwise develops this argument in either his Motion to Suppress or Reply.

Nonetheless, the Fourth Circuit has held that the language "any and all evidence of any other crimes" in a warrant may be "overbroad in isolation."  *United States v. Cobb*, 970 F.3d 319, 331 (4th Cir. 2020).  Thus, there may be merit to Defendant's undeveloped overbreadth argument. The Court need not resolve that question, however, because even assuming that the challenged language is overbroad—Defendant fails to identify any evidence seized solely pursuant to that language.  This silence is pivotal because the Fourth Circuit formally adopted the severance doctrine, which provides:

> We also affirm the district court's ruling that the constitutionality of the warrant was unaffected by the superfluous language included at the end of the warrant.  Although we agree that the phrase "[a]ny and all evidence of any other crimes," standing alone, is overbroad, it did not render the entire warrant invalid. Under the severance doctrine, "the constitutionally infirm portion" of a warrant— "usually for lack of particularity or probable cause—is separated from the remainder and evidence seized pursuant to that portion is suppressed; evidence

seized under the valid portion may be admitted." *United States v. George*, 975 F.2d 72, 79 (2d Cir. 1992)

*Cobb*, 970 F.3d at 330–32.  Applying that doctrine here, Defendant must identify evidence seized solely pursuant to the challenged "any and all documents" language in order to obtain suppression. Defendant fails to do so, and that failure is dispositive.  Thus, even assuming that the challenged language is overbroad, the severance doctrine forecloses suppression on the present record. Defendant's Motion to Suppress the Residence Warrant is therefore denied.

### V.  CONCLUSION

For the reasons stated above, the Defendant's Motion to Suppress (ECF NO. 19) is denied.

/s/

Roderick C. Young
United States District Judge

Date: July 21, 2026
Richmond, Virginia

11